Case number 17-5093. Soundboard Association Appellant v. Federal Trade Commission. Ms. Donnelly for the appellant, Mr. Hoffman for the appellee. Good morning. Good morning, your honors. May it please the court. After nine years of building an industry around an established technology, the FTC has ripped the rug right out of under it. This case is about the FTC's new rule that substantively expands the 2008 robocall prohibition to apply to soundboard technology for the first time without honoring existing regulatory process. Well, you say the commission ripped the rug out from under it. Did you ever ask the commission for its opinion? No, and it wouldn't be required here because this rule has the force and effect of law, and there's no reason, as the district court stated, to even doubt that this rule does not reflect the position of the agency itself. It is here defending it today. Can I just ask a procedural question? Yes. The way I read your complaint in the district court and your brief in this court, if we disagree with you that this is final agency action, all of your claims have to be dismissed on those grounds. That is correct. That's correct. So how do we distinguish this case from other cases? This case is distinguishable because we're not dealing with an interpretive rule. We're dealing with a legislative rule here. But before that, we have to look at finality. And this case passes the test both in Tsibagagi and Bennett v. Spears. It marks the consummation of the agency's decision making process. How is that when the agency's regulations say that staff is not delegated the authority to commence an enforcement proceeding? They have to get commission authority. Because we're not in an enforcement context, Your Honor. We're in a rule making context here. And agencies cannot escape judicial review of their actions merely by using subordinates to announce new substantive rules. This is out of labs, hawks, and frozen foods. So you cite Appalachian Power for the notion that the statement in the letter that this is a boilerplate. But would you not agree that the regulatory scheme is different here? I don't think that's dispositive. And I think that the EPA line of cases make it clear. But so do Abbott Labs, hawks, and frozen foods. Those are not EPA cases. Well, well, well, well, well, well. Just Appalachian Power. Sure. EPA had delegated authority. Here, what I thought Judge Wilkins was focusing on was the commission has not delegated authority to staff. So your client was faced with a letter that you disagreed with the opinion expressed in the letter. And the commission had never expressed its position, so far as we know, other than in the rule which you say does not apply to your operation, your client's operation. Right. The 2008 robocall prohibition is silent as a soundboard. And the FTC confirmed in writing in 2009 that it does not apply to soundboard. Well, staff confirmed. Right. And why do you think the fact that the commission has set up a different regulatory scheme makes no difference? Because this rule amends a 2008 legislative rule. It is a rule from which legal rights and duties and legal consequences flow. No, I understand that. But the commission promulgates a rule. For years, staff in the enforcement division has taken the position it doesn't apply to your client's operation. Then staff changes its mind. Do we know what the commission thinks? I think we do, because I think the commission's here defending it today. How do we know what the commission thinks when the commission's regulations say that it hasn't delegated this authority and it authorizes you to seek an advisory opinion from the commission? I think the government tried in frozen foods, I'm sorry, in Abbott Labs to distinguish frozen foods for much the same reason that you're discussing now, in that... A different regulatory scheme? More so that, in that case, they were saying in an enforcement context, in order to actually file an enforcement action, they would need the attorney general to give its final blessing in order to file. But that's a different context, and we're dealing with a rule making context here, and we're dealing with an FTC staff letter that was issued by staff with enforcement authority here that binds an industry. This bans a technology and wipes out an industry. It's not a letter that's merely suggestive or voluntary or tentative in nature, and that's how we distinguish other cases relied upon by the FTC here, like reliable auto sprinkler and holistic handling. So it's your position that even though the commission regulations do not delegate, as in the EPA context, to a division to speak for the commission, and even though its regulations say you could ask the commission for an advisory opinion, nevertheless, until the time the commission issues that decision. So your client faces these penalties unless it conforms within six months? Yes, it does face these. So your client has to spend money and change its process during the period of time you might seek an advisory opinion? Absolutely, but there's no reason to suspect that an advisory opinion would be any different than the final rule with binding legal effect. But your client hasn't sought an advisory opinion, right? Yeah. But there's no reason to here, because we have a rule with final force and effect of law. Well, the reason to might be that you're going to get kicked out of court, but why wouldn't it be prudent to seek an advisory opinion when you get an opinion from staff that says we're only speaking for us, the staff? And I understand your point, but I think we have to look at what this letter really is. This is a letter issued by staff with enforcement authority without affording the regulatory process. But they don't have enforcement authority unless the commission agrees, right? Right, but that's an enforcement context. They've issued a new rule that says, industry, you have six months to come into compliance, and you have to make the decision between undertaking the cost of compliance, which, as Judge Rogers indicated, yes, absolutely involves scrapping a technology in which it has vested millions of dollars. But within that six months, you could have an opinion from the commission, which would be binding, right? Just as binding as this letter is. So my point is that... In other words, were this court to grant you the relief you want, would we, in effect, be saying the commission could not permissibly set up the regulatory scheme it has, saying that only it can decide whether to proceed with enforcement, and staff opinions are not binding on the commission? No, I don't think that's what we're stating here. I think what we're stating is we have to look at what this letter really is, and because it's... I understand that, and that's why I brought up the cost and the delay of getting an opinion. I'm trying to understand the finality aspect of this, when the commission has set up a scheme that says, we speak for ourselves, staff does not speak for us. Now, it has a rule that your client was happy with until this staff letter came out. Absolutely. And so how do you seek relief? We seek relief here in a court of law, because this is a final legislative rule. You could not go to the commission and ask for an advisory opinion and seek a stay of the enforcement of this letter? I don't think that would render a different result than what we have here. The commission's defending the rule here today, and it bears all the hallmarks of finality. The commission is saying we don't have jurisdiction. I don't think that staff has rule making authority to issue the final legislative rule it did, and that's what we're arguing here today, and that it issued a letter that compels an industry to make that decision, undertake that cost of compliance, or shut its doors. And writing to the commissioners and saying, do you agree with this or do you not agree, is a costly endeavor and takes so much time. In addition to, industry has relied on the plain language of the 2008 rule, and the FTC's written confirmation in all the contemporaneous pronouncements of the agency for nine years. But, I mean, agencies have lots of these sorts of mechanisms. The SEC has provisions whereby regulated entities can seek a no action letter from SEC staff. And people have been doing that for generations, but we've held, and all the courts have held, and the rules are clear that that no action letter isn't binding. I mean, in order for these agencies to operate, and for regulated entities to kind of work within reason, you have these kind of informal guidance, but it's understood that they're not speaking for the commission in these contexts, unless the rule making structure dictates otherwise. And so, I guess the question here is, is why does this rule making structure dictate otherwise here? I think this case follows Abbott Labs, and Hawks, and Frozen Foods, which found letters in those cases to be final and binding, just as this letter is. This 2016 letter is no less final or binding than any further letters from the commission. The FTC council conceded to the district court that the agency's review of this matter is at its end. And the district court noted, there's no reason to doubt here today, that's not the reflection of the position of the agency itself. What exactly did the FTC lawyer say, though? Do you think you're paraphrasing? He said the review of the commission is at its end. Well, he said, in response to the district court's question, he was unaware. Isn't that what he said? Unaware of any intent by the commission? Yes, I believe I quoted the district court, which I think was quoting the transcript, but I can pull that exact language. But, I mean, if the commission hadn't been asked to review the issue, then its review was at an end because there was never a beginning. I think if we look at the Ciba-Geigy factors and the Bennett v. Final Agency action under the cases cited, EPA and non-EPA cases, as I said... So your best case, you think, is Abbott Labs? Abbott Labs, Frozen Foods, and Hawks. I think Hawks, decided by the United States Supreme Court just last year, confirmed that Frozen Foods is just as vibrant today as it was then. Provided you have Final Agency in action. And those cases, I think, established that it would do. So even though you received a statement saying, this is only our opinion. And while it's a boilerplate, we said in the EPA context, why is it a boilerplate here? I think it is of the kind to be disregarded as an Appalachian power, as in here. And I don't think that depends on the structure of the organization. So that's what I'm trying to get at. You want us to, in effect, say to the Commission, you have, in reality, delegated authority to the Enforcement Division to speak for you. I think it implicitly has, in allowing this letter to stand. Because this letter affects a final binding legislative rule, albeit without rule making authority by staff. And the unfairness element of all of this is tremendous here, and can't be overlooked. Even the reliance by industry on the 2008 rule. So it's a final binding rule issued by staff that has no authority to issue final binding rules, and there's been no APA notice and comment? Just trying to understand where your legal position takes us. Yes. This case should have been issued through notice and comment rule making, because it affects a change in the legal rights and duties of the parties affected. So I suppose if one of these enforcement lawyers brought an action against one of your clients without seeking Commission approval, then you would concede that that action is proper? I don't think that's even comparable, because it's an enforcement context. And we're dealing with a rule making context, where they've issued a rule that is applicable to all of industry here. This isn't an enforcement action or an investigation targeting one particular entity and saying, here are specific facts. We believe you've violated or were alleging a violation of the robocall prohibition. And in that case, if it had done that and targeted a specific entity and raised specific facts, then I think SBA might be in a position to raise the claims here, but from a defensive posture. But we're not there. We're not in an enforcement or investigative context at all here. We're in a rule making context, where you have staff charged with enforcement that says, this is a new rule. This affects the entire agency. This effectively bans a technology and wipes out industry. And you have six months to comply. And looking at other FTC letters, they don't have the similar compliance deadline. This is unique. This is a final binding rule that imposes legal rights and duties that were not in existence prior to the 2016 rule. And I think legislative rule turns on the existence or non-existence of legal rights and duties prior to this rule. In American Binding Congress, the court... Before I get to that, I just want to understand how this whole advisory process works. Because I thought under the regulation, the Commission decides which things it will issue advice on and which things it will have staff issue advice on. Is that correct? Yes, I believe that's correct.  Interpretations, like this one here. Well, I disagree that this is an interpretive rule. And we argue this is... Well, that's your problem, right? Because if it's more than something that the regulation allows staff to do, then it's not the type of thing to which they've been delegated authority. If it is something for which they've been delegated authority, then it's going to have to fall within those categories. So I think the difficulty here is, your position is kind of... I think you need it, too. You want it to be something that's within their delegated authority, but in fact, then argue that what they did is far beyond their delegated authority. And that is something that only the Commission could do under the regulation. So how do you reconcile that? Well, I don't think... We're certainly not challenging the statutory authority to make rules in this space, but we are challenging the staff charged with enforcement's rulemaking authority to issue the rule that it did. And without challenge, without the opportunity to be here in court today, and to say this is an unlawful agency action that failed to observe the required procedure, then industry is forced with a decision to comply or... We got that you've got the compliance pressure, but I mean, it seems to me pretty clear from the rule that staff itself cannot... You say they should have done notice and comment rulemaking. Correct. Staff itself cannot do that. The Commission has to do that. Right, but the Commission should. It's an agency issue here. So this is... You look at this and you go, this is... Anyway, I look at it, a legislative rule, it's clearly invalid and outside the scope of staff authority because they can't do legislative rules. But if you're... Right? So I don't know how you can say they could do it and have the authority to do it when they, of course, don't have the authority to make legislative rules. Well, they're effectively trying to hide behind a law they subvert. I mean, the agency cannot hide behind the actions of its subordinates. It's not dispositive who penned the letter, and that's exactly what it's due here. It's trying to have its cake and eat it too. It's trying to argue plausible deniability, but it's not even plausible. It's saying, we're gonna wipe out an industry. We're not gonna go about it the right way. We're not gonna issue for notice and comment rulemaking. We're not gonna... Maybe it was just an interpretation of the rule, which is exactly what staff is permitted to do. But it's not an interpretation if it's... Pardon, I'm sorry. If it is an interpretation, you still have your constitutional arguments. And you could say this is exactly within the delegated scope of staff authority. I think what's important here, and distinguishes from several other cases, including Flight Now, is we're dealing with not an interpretation of an existing definition. Pre recorded message isn't even defined in the rule. This rule is legislating a definition new to the rules, adding something. It is creating substantive rights and duties and legal requirements and legal consequences. And I think that's a positive here. Was the 2009 letter also a legislative rule? I don't know that it is, no. But I do think it's... How could they have different statuses? They both did the exact same thing in determining legal obligations from your viewpoint, and consequences for a practicing entity. How could one be legislative and the other not? The 2009 letter, I do agree, interprets the 2008 legislative rulemaking, but it doesn't add substantive rights, legal obligations, or duties. It doesn't create anything new. It interprets the 2008 legislative rulemaking. The 2016 letter does more. What did it interpret in 2009? That the 2008 robocall prohibition does not apply to... What language did it interpret? What phrase did it interpret? I think it interpreted the entire rule, including the term pre recorded message. It interpreted the pre recorded message. And in 2016, they've interpreted pre recorded message again, correct? But even if you were to say, okay, yes, that is an interpretation, it added something. And that's our point here, that's our argument. It added something beyond just interpretation. If the 2016 letter had just rescinded the 2009, I think that'd be a different circumstance. Sorry. What did it add? It said that's a... Soundboard technology qualifies as a pre recorded message. I think it changed the scope and broadened the scope of the prohibition. Well, that's what it says when it says, here's what pre recorded message... In 2009, we said, here's what pre recorded message means. That's an interpretation. In 2016, they said, here's what pre recorded message means. That's an interpretation. You just say when our ox is gored, it's legislative, but when someone else's ox is gored, it's not. What it turns on is the prior existence or nonexistence of legal rights. What it added is legal rights and duties.  Establishing legal rights and duties? No, because it was an interpretation of a 2008 legislative rule. And so I think what we're dealing with here is unlike flight now, which looked at the definition under a rule of common carrier and looking at whether flight sharing services met that definition. This is important to distinguish one, we're not dealing with analyzing an actual definition. And we're looking too at an agency's ability to hide behind the ambiguous term. And we've cited to several cases that say that would just leave the opportunity for FTC and other agencies to similarly hide behind the ambiguous terms and amend rules as they see fit, which has significant impacts on industries such as here, where it effectively wipes one out. Why don't we hear from the commission who will give us some time on rebuttal? Thank you, Your Honors. Good morning. May it please the Court, as I think counsel conceded here, that the threshold question in this case is whether an informal advisory opinion by FTC staff is final agency action under the APA. And there's two reasons why it isn't, I think, as several of the questions indicated. The first is that the commission here hasn't cited anything. We just have an informal opinion by the staff. Certainly a request for an opinion could have been made from the commission, and that wasn't done. But second, the letter... Hang on. So this happened by staff on its own. Did anybody request an opinion? From the commission? Yes. No. No. And so this was made internally. So it's not as though they requested something from the staff rather than from the commission. I believe they requested an opinion from the staff. More commonly... They requested an opinion from the staff? Yeah. More commonly, parties request the opinion from the staff. Part of what I meant to say, we request the opinion from the staff. I had thought the record was that you had gotten a lot of complaints, and so the staff itself decided to undertake a new investigation and met with everybody, and they did this on their own. Is that incorrect? That's correct. In other words, the initial 2009 letter was in response to... I'm talking about 2016. I'm sorry. Sorry. The initial letter, it was in response to a rebuttal from industry. Staff had concerns about that, and staff initiated this process, and so that was going to revoke that letter. That's correct. Then on page 53 to 54 of your brief, you say, speaking on behalf of the commission, that their argument, that soundboard wasn't covered by the regulation, textually impossible. This statement would make no sense if the commission believed that calls using pre-recorded messages to simulate a two-way conversation were already exempt from the TSR. That sounds to me like a pretty flat statement about the commission's interpretation of the regulation itself as forbidding the very argument they're making. Is that... You say that it would make no sense. The commission's regulation would make no sense if it didn't encompass what they did. To the extent they're arguing that... Their argument is that even if this falls in the literal definition of the rule, it is analogous to a two-way conversation, and therefore shouldn't be covered. And I think staff pointed to this language in its letter, and we pointed to our brief, indicating that the fact appears to be inconsistent with what the commission said. That appears to be. It would make no sense. It sounds to me like that's a pretty flat statement that the committee cannot possibly mean under the plain text of the rule in the prior federal register notice what they want it to mean. And on the other hand, the recorded message from the regulation itself cannot reasonably be interpreted not to apply to soundboard technology. So again, this sounds to me like the Federal Trade Commission, and throughout your brief, it sounds like the Federal Trade Commission has submitted a brief that talks about the plain text of the regulation itself for closing their position. I would say that we did talk about the plain text of the regulation in response to the interpretive rule argument. As we pointed out, the argument they've really made is not an interpretive rule argument. It is an arbitrary and capricious argument, which was waived in the district court expressly. I get that. I'm just trying to understand whether your brief here, which to me read, and I'm not saying whether it's right or wrong, but reads very much like the plain text of the regulation incorporates, covers their technology. And any argument to the contrary is just ignoring what the commission itself has said. Do you think the plain text of the regulation, not the letters, put them aside, the plain text of the regulation encompasses their technology? I certainly do. I'm not asking you personally. You're speaking here on behalf of the commission and filed a brief on behalf of the commission. So is the commission of the view that the plain text of the regulation forecloses their technology? The commission as a has never ruled on that question. So the commission authorized us to file this brief. Okay, so they've authorized this brief and it talks a lot about the plain text of their regulation. So I was trying to figure out... It sounded to me like the commission has been fully plugged in here and it's a little odd to say, go back and ask the commission when we have a brief from the commission, an attorney from the commission telling us what the plain language of the regulation means. Yeah, well, the answer is that the commission obviously is free to reach a different decision if the Soundboard Association comes to it and says, no, no, no, no, no, what general counsel said in its brief and what staff said is wrong for all these reasons. They can certainly do that. And if they went to the commission, I expect they would. I expect they would do that. Wait, so when the  commission sees one that says, go ahead and file this brief? The commission will not have had the benefit of a detailed presentation from Soundboard. I mean, the people who review the brief... Had the benefit of the brief. People who review general counsel's brief may well have reviewed Soundboard's brief, or they may not have. I don't know. Well, the fact that the commission could change its mind doesn't have anything to do with finality because the commission can change... If they were to go ask the commission for its view, the regulation is explicit, the commission could change its mind again later too. So I guess the fact that the commission could change its mind doesn't really affect finality. That's just a given for any agency. They can change their mind later on a presentation of new information, correct? I think the fact that the commission could change its mind is not what's relevant so much as the fact that the commission has never considered the question. But then you just told me the commission considered the question because it said, I don't care about any of those old letters, our regulation is plain as plain could be that this stuff is covered. The commission authorized us to file this brief. That says the plain text. The commission authorized us to file this brief. The commission... That says the plain text. I do not agree that in doing that, the commission bound itself or made a final decision on the merits of Soundboard's position. Well, I don't understand what that means then. They authorized you to... Did they authorize the arguments in the brief? I'm sorry? Did they... The brief was reviewed by the chairman's office before it was filed. So does this brief represent the views of the commission or not? Did the commission vote on this brief? No. So this brief doesn't represent the views of the commission? It represents the arguments that we are making on behalf of the commission. I don't think it is a ruling of the commission. It doesn't have the same impact that a matter the commission voted on would have. So then I can't take it as given that it's a view of the commission that the plain language covers their technology. The commission has never addressed this question. I mean, again, this is a side question because... Do we need their view if we think the plain text of the regulation covers it? I'm sorry? If we've got a brief like this and we read the plain text of the regulation... My answer is, you shouldn't be bothering to read the plain text of the regulation and accepting so far as the question here is, is it an interpretive rule? And the question there is... The first question is, is it a rule at all? And it's not because it's not binding. The second question is, if it were a rule, is it interpretive or legislative? And the answer is, it's clearly interpretive just like the ruling right now, which of course affected the entire industry as well, because it's drawn from the language of the regulation. It's an interpretation of the language of the regulation. Right. And so isn't that the exact thing that the commission has delegated to staff to do, to provide industry guidance? When it's something that is not novel or new and, as you would say, is simply saying, here's what the regulation says and this is what it means. They authorize staff to advise industry of staff views. They haven't authorized staff to issue binding interpretations of law. So, counsel points out that this letter is, counsel states, unusual to the extent it set a six month deadline. So therefore, all of this process that we've been talking about that could go on internally before the commission, doesn't really solve the problem from the client's point of view. Is that correct? Well, staff certainly in issuing this decision, staff certainly anticipated that it would have some impact on the industry and that industry would accord itself in a lawful fashion. But it's not a voluntary request, is it? It's not a voluntary request? I think it is consistent with what this court describes as a voluntary request in cases like, as voluntary compliance, in cases like reliable automatic sprinkler and holistic candlers, where the court used the term, the actual warning letters were issued in cases that went much further than this does. And the court viewed that as a request for voluntary compliance, not a final, not a final agency action. Now, of course, in this case, there's no decision by the commission at all and no enforcement could take place without a decision by the commission. So let me just ask you from the point of view of the client. The client has this letter, six months to make changes. So let's just in my hypothetical assume that involves reconfiguring something that costs the client money. Let's suppose it's serious money. So what does the client do? Does it immediately go to court? Does it immediately go to the commission and ask for a stay? Because if it doesn't comply within six months, then, in my hypothetical, the enforcement division recommends to the commission that it file a complaint against the client. And at that point, the client can make all the legal arguments it's making today, but in the meantime, it's spent serious money or not. And if it hasn't, then it potentially faces penalties. Well, of course, in order... And you raised the question of penalties, and I think it's helpful to describe the process in a little bit more detail. So certainly, based with this, I just think the question is, as indicated, the client could go to the commission and say, we think staff has gotten it wrong here. We'd like you to clarify, and this is important because it will cost us a lot of money. And I think that would meet the criteria for a commission advisory opinion. Obviously, the commission's not certainly bound to issue an opinion, but they certainly could make the request, and that wasn't done here. There may well be other procedures they could have gone to. Should the penalty proceeding, that is, that in every instance, the parties would have an opportunity to meet with the commissioners and argue with the commissioners either why the rule shouldn't apply to them or why they shouldn't be subject to penalties. So as in holistic handlers and AT&T, there's a further level of administrative process that would have to happen before any enforcement took place. So for that reason, the sound board isn't permitted to circumvent that process and come straight to court. So had it filed a request for an advisory opinion from the commission, even if the commission had not rendered that opinion in time, before the six months or before the client had spent serious money, that would be a safe harbor, as it were, against any action against... I don't know if it would be a safe harbor. I mean, again, the only thing that is a safe harbor in terms of the regulation is a commission opinion itself. What I will say is that the standard for a penalty is knowledge, actual knowledge or knowledge fairly implied. And so a court will ultimately decide whether a penalty was appropriate, and a court would have to take into account various factors, including the degree of culpability and so on and so forth. Is a staff letter ever been evidence on which knowledge can fairly be implied? Has it ever been evidenced? I don't know the answer to whether that... Could it be? Could it be? I think it's certainly something that a reasonable business would take into account. So they could fairly be... Right. So that could be a basis for penalty. I think that's something that could be taken... That a court would likely take account of in determining. There could be lots of factors, but that could be... Certainly be a factor. And this letter said that it was taking effect, I think, in May of this year. And so if someone were to... If the commission were to decide to prosecute Soundboard next week, could it get $40,000 a day, a call, since May 2017, when they had at least this implied knowledge? The statutory maximum is $40,000 per violation. As a practical matter... Is each call a violation? I believe each call would be a violation. Each call's a violation. Right. But again, it's up to that amount. The amount of the penalty is determined by the court based on... And this is... They're at risk of $40,000 per call per day since this letter took effect. I don't think that's really correct because a court can't impose financially ruinous penalties. A court's got to impose penalties that are appropriate based on the degree of culpability, history of prior conduct, ability to pay, effect and ability to continue to do business, and such other matters that justice may require. And obviously, if... I assume you're not speaking on behalf of the commission and telling me they couldn't seek that relief against Soundboard. I'm simply reading from the statute there. Yeah, yeah, yeah. So the statute has lots of factors, but it doesn't mean it's... As a matter of law, they're facing a risk. I'm not saying a certainty. They're facing a risk of $40,000 per call, which is probably, I don't know how many thousands of calls per day, since this thing became, in the letter's terms, effective in May. I think as a practical matter, the statute would prohibit the imposition of ruinous financial penalties. And if it weren't deemed ruinous, they could face that. Okay. Anything short of ruinous, they would face. Well, if there were a... Substantial risk. I'm not saying certainty. I agree that there is a heightened risk of facing penalties if companies continue to engage in this behavior. Based on this letter? Based on this letter, yeah. How do you distinguish SACIT versus EPA, then? I'm sorry? How do you distinguish SACIT versus EPA? Another non final, no enforcement action taken, but they gave them a letter that said, unless you take care of your lands the way we want you to, penalties start occurring. I'm not familiar with that case specifically, but what I will say is that I think the difference here is that there is a further layer of administrative process before any action can be taken. Yeah, that's what... EPA is an agency where the staff has enforcement authority and doesn't need to go to the top to do that. That's not the way the commission works. That's not the way... And so in this circumstance, as I said, before any enforcement action could be taken, there would need to be... There would need to be a further round of process in front of the commission, and the parties would even have a chance to argue in front of the commissioners why they shouldn't be subject to penalties, why the rules shouldn't apply to them. And all of that is stuff that would be taken into account in determining whether penalties were appropriate and the amount of any such penalties. You don't deny, I take it, that this rule has First Amendment implications. You have your view that it's perfectly consistent with the Constitution, but that it does involve the regulation of speech. Yes, I would agree that it does involve... Do we require finality with the same rigor when there are threats to speech? Do we require people to wait until someone's actually brought an enforcement action, or is the fact that an agency position creates a substantial risk of near ruinous penalties for speaking enough to allow an action to challenge, to raise those First Amendment claims? Well, in Hallista Candler's where, again, the agency did send a warning letter which explicitly mentioned the risk of regulatory actions, including civil penalties, which this letter doesn't say that, there was a First Amendment claim, and this court held that because the action was not final under the APA, the court couldn't do that. So as I said, I think counsel conceded here that the finality is a threshold question for all of its claims. So I would say that finality... So the First Amendment doesn't have anything to bear. There's no... The chilling speech is not enough. I mean, I don't agree that this improperly chills speech, but... Improperly is answering the constitutional question. I get you guys your arguments on that, but... My answer, though, is that they brought an APA claim which requires final agency action, and they haven't argued that to the extent... In fact, they conceded that they need to show finality, so there's no basis for saying that some special rule should apply here because there was a constitutional claim. Just one other point which was mentioned in terms of the supposed concession that was made in the district court. I don't believe counsel did concede anything. I think he merely indicated that the stat was completely... Had littered its review and that he didn't know of the commission planning to further review it. He certainly didn't indicate that the commission had issued any sort of final decision, but it didn't. Unless the court has further questions, I'm happy to pass up the judgment of the appellant. Thank you. Counsel for repellent? Thank you, Your Honors. I would just like to make a preliminary note. Counsel for the FTC noted he would like to hear a presentation from SBA, and I think what we would all like to see is proper rule making here, and an opportunity for everyone, all the public, all consumers, and all stakeholders to put their objections and evidence on the record. And this case touches on both procedural and constitutional rights, and we've raised claims under the APA and the First Amendment. And I think as Judge Millett made clear here that... Millett. Sorry, Millett. Sorry, my apologies. Judge Millett made clear here, we have significant concerns with chilling freedom of speech. This case deals with three primary layers of content based restriction, in its subject matter, substantive content to the message, and in its function, such that it cannot be justified without reference to the content of the speech. And a government regulation is content based if it applies to particular speech based on its content, subject matter, topic, or in its function. This is read in its... Do you have any response to Council's point about this additional layer of administrative procedure? An additional layer with respect to administrative procedure? You heard Council represent that you have the opportunity to make your arguments to the Commission as to why staff misinterpreted the legislative rule you claim had issued, and that would have done... In other words, like an exhaustion argument. Right. I think the FTC, again, hides behind the very law subverts here. And what we're looking for is an opportunity on an administrative record, a public record, to talk about these issues and to present evidence and object to the FTC's evidence. We haven't even seen it. Do you agree, do you not, or maybe you don't, that under the Commission's rules, you did have the opportunity to ask for an advisory opinion and make your arguments to the Commission itself? Do you agree with that, under the Commission's regulation? I don't think it's necessary here because we have a final... No, no, that was my question. Was it? No, Your Honor, it was not. I think that it could have, but it wasn't necessary here. Even though you knew you'd be faced with this finality issue? I think the finality issue was really a list of excuses presented by the government to avoid... Well, it's jurisdictional from our point of view. I understand that. And I think the district court got that one right. I think that this is clearly a final agency action and it satisfies all of the tests used by this circuit and the Supreme Court. Where does the Division of Marketing Practices fall within the division of the TSR specifically? And the letter was only assigned by the associate director, not by the director. Doesn't that make it even more... I don't think it does. I don't think... I think the district court's correct in noting that it doesn't... Whoever penned... Whomever penned the letter is not dispositive. It doesn't matter that it was an assistant... Well, at some level, it's gotta be right within the staff. If some line attorney just sends a letter out, that can't be enough. It's gotta be somebody... And they say it's delegated to staff. Is there any precedent for going below directorship? I don't think so. I think what we're dealing with here is a letter that, as we've discussed, it binds agency. It binds agency and it binds the industry. Clearly, we can't look at just who penned it and the specific authority of that particular position when you've gotta look at the letter, the reasonable intent, and the intended intent of this letter. And that is to wipe out industry. And I really don't think we can look back and say, just because the person with supreme authority or the five people with supreme authority at the commission didn't sign it, it doesn't do what it was intended to do, and it doesn't do... You keep referencing intent to get rid of the industry. I didn't find that anywhere. I mean, profits might go down, arguably, but profits might go up, who knows? I didn't see that as the staff's intent. I think reasonable effect is reasonable intent here, and I can't... Where is the evidence of reasonable... The effect is to wipe out an industry, and it had to know that was the effect. Well, let me say, sitting here, I don't know that, and I don't see that in the record. And I understand Judge Millett's hypothetical on $40,000 a day, but it could also be $1 a day. And I was wondering, what would have happened if this letter said, your client has 24 hours to come into compliance? What would you have done? Rushed into court with a preliminary injunction motion. I think the result is the same, the rule is the same, and the effect is the same. Alright. Anything further? Justice, the First Amendment has long preferred to punishing unlawful speech than protecting... Sorry, than prohibiting protected speech before it is to occur. In this case, it does chill First Amendment rights. Thank you, Your Honors. Thank you. We'll take the case under advice.
judges: Rogers, Millett, Wilkins